**CASE NO. 21-1415**
_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

SARA VITLLOCH-ROQUE
Plaintiff/Appellant

v.

METROHEALTH, INC. d/b/a HOSPITAL METROPOLITANO
Defendant/Appellee
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**
_____

**BRIEF OF APPELLEE METROHEALTH, INC.**

**Counsel for Appellee**

Lloyd Isgut-Rivera, Esq.
USCA-1st Cir. No. 1175903
E-mail:  lisgut@pg.legal

Nannette Rodríguez Rodríguez, Esq.
USCA-1st Cir. No. 1199053
E-mail nrodriguez@pg.legal

**Pizarro & González**
PO Box 194302
San Juan, Puerto Rico 00918-4149
Tel. (787) 767-7777
Fax (787) 763-2286

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In compliance with Federal Rule of Appellate Procedure 26.1, Metrohealth, Inc. states that it is a corporation registered under the laws of the Commonwealth of Puerto Rico. Furthermore, Metrohealth, Inc. submits that it does not have a parent corporation nor does a publicly held corporation own ten percent (10%) or more of its stock.

## <u>TABLE OF CONTENTS</u>

**CORPORATE DISCLOSURE STATEMENT** .................................................1

**TABLE OF CONTENTS** ................................................................2

**TABLE OF AUTHORITIES** ..........................................................3

**I.   STATEMENT OF THE ISSUES** .................................................8

**II.   STATEMENT OF THE CASE** ...................................................8

**III.   SUMMARY OF THE ARGUMENT** ..........................................17

**IV.   STANDARD OF REVIEW** ......................................................18

**V.   ARGUMENT** .........................................................................19

   A.  **The Honorable District Court correctly granted Metrohealth's**

   **Motion for Summary Judgment** ....................................... 19

**VI.   CONCLUSION** ........................................................................42

**VII.   CERTIFICATE OF COMPLIANCE** .........................................44

**CERTIFICATE OF SERVICE** .........................................................45

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Ameen v. Amphenol Printed Cirs., Inc.,*
    777 F.3d 63, 68 (1st Cir. 2015) ............................................................ 18

*Bekele v. Lyft, Inc.*
    918 F.3d 181, 186-187 (1st Cir. 2019)………………………………… 23,
    36, 37

*Bhatti v. Trustees of Boston University,*
    659 F.3d 64, 73 (1st Cir. 2011)………..………………………………… 30

*Brader v. Biogen, Inc.,*
    983 F.3d 39, 53 (1st Cir. 2020) ............................................................ 18

*Calero-Cerezo v. U.S. Dep't of Justice,*
    355 F.3d 6, 19-20 (1st Cir. 2004)……………………………………….... 20, 21

*Cham v. Station Operators, Inc.,*
    685 F.3d 87, 94 (1st Cir. 2012)………………………………………… 29

*Colón-Fontañez v. Municipality of San Juan,*
    671 F.Supp.2d 300, 326 (D.P.R. 2009) ................................................ 20

*Criado v. IBM Corp..*
    145 F.3d 437, 443 (1st Cir. 1998)…………………………….…………… 21

*Del Valle-Santana v. Servicios Legales de P.R., Inc.*
    804 F.3d 127, 129-130 (1st Cir. 2015)……………………………….. 29

*De Los Santos Rojas v. Hospital Español de Auxilio Mutuo de Puerto Rico, Inc.,*
    85 F.Supp.3d 615, 625 (D.P.R. 2015) ................................................ 20

*E.E.O.C. v. Kohl's Dept't Stores, Inc.,*
    774 F.3d 127, 132 (1st Cir. 2014)……..………………………………… 22

*Echevarría v. AstraZeneca Pharm. LP,*
    856 F.3d 119, 128 (1st Cir. 2017)………..……………………………  21

*Enica v. Principi*
    544 F.3d 328, 338-39 (1st Cir. 2008)………………………………..  22

*Faragher v. City of Boca Ratón,*
    524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed. 662 (1998)…………  32

*Feliciano Martes v. Sheraton,*
    182 D.P.R. 368, 395-99 (2011)…………………………………………  37, 38

*Franceschi- Vázquez v. CVS Pharmacy,*
    183 F.Supp. 3d 333, 341 (D.P.R. 2016)………………………………  31

*Franco v. Glaxosmithkline,*
    2009 WL 702221 at 17 (D.P.R. 2009)…………………………………  30

*García-Ayala v. Lederle Parenterals, Inc.,*
    212 F.3d 638, 647 (1st Cir. 2000)……………..………………………  21

*Godoy v. Maplehurst Bakeries, Inc.,*
    747 F.Supp. 2d 298, 318 (D.P.R. 2010)…………………………….  37, 38

*Gross v. FBL Fin. Services, Inc.*
    557 U.S. 167, 176 (2009)…………………………………………………  28, 29

*Gu v. Boston Police Department,*
    312 F.3d 6, 14 (1st Cir. 2002)…………………………………………  29

*Hansen v. Henderson*
    233 F.3d 521, 523 (7th Cir. 2000)…………………………………….  23

*Hidalgo v. Overseas Condado Ins. Agencies, Inc.,*
    120 F.3d 328, 337 (1st Cir. 1997)………..……………………………  28

*Jacques v. Clean-Up Group, Inc.,*
    96 F. 3d 506, 511 (1st Cir. 1996)……..……………………………..  20

*Jones v. Walgreen Co.,*
   679 F.3d 9, 14 (1st Cir. 2012)……………………………………… 20

*Lang v. Wal-Mart Stores East, L.P.*
   813 F.3d 447, 454 (1st Cir. 2016) …………………………………… 18

*Lewis v. Zilog, Inc.,*
   908 F.Supp. 931, 947-948 (N.D.Ga. 1995)…………………………… 21, 22

*Marrero v. Goya de Puerto Rico, Inc.,*
   304 F.3d 7, 23 (1st Cir. 2002)………………………………….…… 29

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792, 802 (1973)  .................................................................... 19, 28

*Meléndez v. Autogermana, Inc.,*
   606 F.Supp. 2d 189, 198 (D.P.R. 2009)……………………………… 30

*Miranda-Rivera v. Toledo-Dávila,*
   813 F.3d 64, 76 (1st Cir. 2016)……………………………………….. 41

*Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria*
   550 F.Supp. 2d 220, 227 (D.P.R. 2007)……………………………… 31

*O'Rourke v. Citi of Providence,*
   235 F.3d 713, 728-29 (1st Cir. 2001)…………………………………….. 32

*Pages-Cahue v. Iberia Líneas Aéreas de España,*
   82 F.3d 533, 536 (1st Cir. 1996)………………………………………….. 30

*Phelps v. Optima Health, Inc.,*
   251 F.3d 21, 28 (1st Cir. 2001)………………………………………….. 22

*Ramírez-Muñoz v. Wyndham Grand Rio Mar Beach Resort and Spa,*
   2016 WL 1698291, *8 (D.P.R. April 26, 2016)……………………… 29

*Ramos-Echevarria v. Pichi's, Inc.,*
   659 F.3d 182, 186 (1st Cir. 2011)  ...................................................... 19, 20

*Reeves v. Sanderson Plumbing Products, Inc.*
530 U.S. 133 (2000)…………………………………………………...    30

*Rodriguez-Fonseca v. Baxter Healthcare Corp of Puerto Rico,*
899 F.Supp.2d 141 (D.P.R. 2012)……………………………………..    20

*Ruiz v. Posadas de San Juan Assocs.,*
124 F.3d 243, 248 (1st Cir. 1997)…………………………………..    31

*Sansone v. Brennan*
917 F.3d 975, 979 (7th Cir. 2019)…………………………………..    23

*Snell v. Neville*                                                       23,
998 F.3d 474, 479 (1st Cir. 2021)………………………………….    36, 37

*Taylor v. Am. Chemistry Council,*
576 F.3d 16, 24 (1st Cir. 2009)  ............................................................    18

*Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of Londong,*
637 F.3d 53,56 (1st Cir. 2011)  ............................................................    18

*Vande Zande v. State of Wis. Dept. of Admin.*
851 F.Supp. 353, 360 (W.D. Wis. 1994)……………………….………    22

*Vázquez Robles v. CommoLoco, Inc.,*
186 F.Supp. 3d 138, 156-57 (D.P.R. 2016)……………………………    38

*Vesprini v. Shaw Contract Flooring Serv., Inc.,*
315 F.3d 37, 43 (1st Cir. 2002)…………...………………………    30

*Vega v. Kodak Caribbean, Ltd.,*
3 F.3d 476, 479 (1st Cir. 1993)………………………………………..    31

## **STATUTES**

Act. 44 of July 2, 1985, 1 L.P.R.A. §501 et seq. ......................................    16, 37

Act. 80 of May 30, 1976, 29 L.P.R.A. §185a et seq.  ...............................    16,41,
42, 43

Act. 100 of June 30, 1959, 29 L.P.R.A. §146 et seq. ................................ 16, 37

Act. 115 of December 20, 1991, 29 L.P.R.A. §194 et seq. ....................... 16, 37, 40

29 L.P.R.A §185e…………………………………………………………… 42, 43

29 U.S.C. §621 et seq Age Discrimination in Employment Act of 1976….. 16

29 U.S.C. §623 et seq Age Discrimination in Employment Act of 1976..... 28

42 U.S.C. §12101 et seq American with Disabilities Act ........................ 16

42 U.S.C.A. §12111 American with Disabilities Act .............................. 21

42 U.S.C.A. §12112 American with Disabilities Act .............................. 19

## **RULES**

Federal Rule of Appellate Procedure 26.1……………………………….. 1

Federal Rules of Civil Procedure, Fed. R. Civ. P. 56 ……………………. 8

Federal Rule 32of the Federal Rules of Appellate Procedure…………….. 44

## **REGULATIONS**

29 C.F.R. Part 1630, Appendix …………..……………………………….. 21

## I.    <u>STATEMENT OF THE ISSUES</u>

The Hospital submits that the District Court's decision to grant Metrohealth's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 56, was correct and should remain undisturbed.  Thus, the issue before this Honorable Court of Appeals is whether the District Court was correct when it granted Metrohealth's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II.    <u>STATEMENT OF THE CASE</u>

Vitlloch is seventy-two (72) years old. Appendix ("App."), page 101. Vitlloch started working in the Hospital as an employee in the Medical Records Department on June 1, 2000. App. P. 101-102. On May 21, 2014, Appellant was assigned to the position of "Information Management Clerk" in the Department.  App. P. 101-102

The Medical Records Department, also known as the Information Management Department (hereinafter, "Department"), is in charge of processing, for billing purposes, the Hospital's medical records related to the admissions and discharges in the Hospital. App. P. 101, 103. Even though there are digital medical records, almost every medical record in the Department is in paper form. App. P. 103. Each medical record contains several pages inside. App. P. 103. In 2014, Mrs. Elizabeth Gotay was the Director of the Department and Appellant's supervisor. App. P. 102.

Appellant's duties as "Information Management Clerk" in the Department include checking the admissions and discharges in the Hospital, making sure each medical record is complete and, if not, take actions to make sure the medical records are complete, receive correspondence requesting information from the Hospital related to the medical records, and make sure those requests are filled out correctly, among other duties. App. P. 102.

Until September 2017, the Department used to be located next to the Hospital in the lobby of the Villa Magna Condominium. App. P. 103. On September 2017, the Department stored between ten thousand (10,000) to fifteen thousand (15,000) medical records. App. P. 103. While located at the Villa Magna Condominium, the Department used to be surrounded by glass. App. P. 103. However, when Hurricane María hit Puerto Rico during the month of September 2017, the glasses that surrounded the Department exploded. App. P. 103. As a result, all the medical records in the Department got wet and approximately fifty percent (50%) of the medical records in the Department ended up in the street. App. P. 103. The medical records that were in the street were wet, had mold and pages were detached from the medical records. App. P. 103. Due to the damage sustained by the Department due to Hurricane María, the Department was relocated inside to the Hospital's facilities. App. P. 104.

After Hurricane María, Vitlloch and a co-worker were assigned to go through the wet medical records in a conference room in the Hospital and write down the name and record number of the medical records for insurance purposes. App. P. 104. Vitlloch was provided with masks and gloves to go through the medical records. App. P. 104.

After Vitlloch finished going through the medical records in the Hospital's conference room, Appellant went to work in the Department. App. P. 106. Vitlloch considered that the area where the Department was relocated was humid and not in optimal conditions because it had water damage and the ceilings tiles had to be changed due to the humidity. App. P. 106. The documents that were brought to the Department were also wet. App. P. 106.

Approximately two (2) days after Vitlloch went through the medical records, the Department Director, Mrs. Gotay, informed her that at the behest of the insurance company, the medical records had to be counted once more. App. P. 104. After Appellant was informed that she had to count the medical records again she visited her doctor because she had shortness of breath and could not go through the medical records again because she considered them to be contaminated. App. P. 104. Vitlloch visited her pneumologist, Dr. Aranda, during the first days of October 2017 because she was not feeling well. App. P. 104. Dr. Aranda informed Vitlloch that she could not work in damp areas or areas with mold and provided her with a medical

certificate to request a reasonable accommodation in the Hospital. App. P. 105. The
medical certificate stated that Vitlloch had a respiratory condition and should not be
exposed to vapors, odors, fumes, and/or damp areas because of her condition. App.
P. 105. The medical certificate also made a request for a reasonable accommodation
on behalf of Appellant. App. P. 105.

Vitlloch has a condition of the lungs that affects certain aspects of her life,
such as exercising, running, and being in places that have humidity or mold
problems, but she does not consider her condition to be an impairment. App. P. 105.

Vitlloch tendered Dr. Aranda's medical certificate to the Hospital and took
ten (10) days of sick leave. App. P. 105. On October 27, 2017, after Vitlloch returned
from her sick leave, Mrs. Gotay gave Appellant a set of documents to be filled out
by Dr. Aranda related to her condition. App. P. 105. Vitlloch returned the document
filled out by her doctor on November 1, 2017. App. P. 105. Appellant's doctor stated
that she should avoid humid areas since it could exacerbate her lung condition. App.
P. 106.

On November 3, 2017, Vitlloch was informed that due to the situation caused
by Hurricane María the Hospital did not have an accommodation that would meet
the conditions set forth by Dr. Aranda. App. P. 106-107. Vitlloch was informed that
the accommodation she sought, avoid smoke, vapors, strong odors and humid areas,
did not exist in the Hospital at that time. App. P. 106. Furthermore, Vitlloch was

informed that the area where the Department was located, although temporary, was not completely free of humidity or vapors due to the emergency caused by Hurricane María in the Hospital. App. P. 107. On that same date the Hospital gave Appellant a letter that informed her that due to the damages caused by Hurricane María to the Hospital, she would inevitably be exposed to humidity either in her work area or while she carried out her duties. App. P.107. Since the Hospital could not provide Vitlloch with the exact accommodation she sought, the Hospital notified her that she would be placed on an unpaid leave for a period of three (3) months. App. P. 106-107. However, Vitlloch was informed that if during the three (3) month period there was any development in her health condition, she could contact the Hospital so they could meet and reevaluate her condition. App. P. 107. The Hospital also asked Vitlloch to inform her doctor of the Hospital's determination and once he reevaluated her, the Hospital could reconsider her request. App. P. 107.

Despite the Hospital's request, Vitlloch did not ask Dr. Aranda to reevaluate her until February 2018. App. P. 107. Vitlloch also did not contact the Hospital from November 2017 until January 2018, nor did she ask to return to work during that period. App. P. 107.

On December 6, 2017, Mrs. Ebony Walters, the Hospital's Human Resources Coordinator, called Vitlloch to ask how she was, if she had been to the doctor, and if there was anything that she needed. App. P. 107-108.  The following day, on

December 7, 2017, Mrs. Walters sent a letter to Vitlloch summarizing their conversation and informing Vitlloch that even though she had been placed on a three (3) month unpaid leave, Vitlloch could return sooner if she presented a medical certificate that authorized her to work without humidity affecting her health. App. P. 108. Mrs. Walters also requested that Appellant ask her doctor to submit in writing the information he needed regarding the percentage of humidity in the Department. App. P. 108. Finally, Mrs. Walters notified Vitlloch that her request for sick leave pay had been approved. App. P. 109. After the conversation with Appellant, the Hospital paid her twenty (20) days of sick leave during the month of December 2017. App. P. 108.

Despite the Hospital's request, Vitlloch did not ask Dr. Aranda to provide in writing the information related to the humidity in the Department. App. P. 108. Vitlloch also failed to seek a new recommendation from Dr. Aranda. App. P. 109.

On February 1, 2018, Vitlloch appeared in the Hospital. App. P.110. When Vitlloch arrived in the Department, Mrs. Gotay informed her that she had to present a certificate from her doctor authorizing her to return to work and sent Vitlloch to the Human Resources Department. App. P. 110. On February 2, 2018 Mrs. Walters called Appellant and informed her that she needed a medical certificate from her doctor before she could return to work. App. P. 110. Mrs. Walters further informed Vitlloch that even though significant repair had been done, it was impossible for the

Hospital to guarantee that she would not have contact with wet documents since a lot of files got wet. App. P. 110.

Four (4) days later, on February 6, 2018, Vitlloch visited Dr. Aranda to request the certificate that stated that she was fit for work. App. P. 110. The medical certificate written by Dr. Aranda on February 6, 2018 stated that Vitlloch could perform her work in a reasonably clean environment, free of smoke and vapors. App. P. 110-111. Vitlloch presented Dr. Aranda's medical certificate and returned to work. App. P. 111-112.

During the month of January 2018, Vitlloch went to the Hospital and saw that Mrs. Karelys Hernandez, who also worked in the Department, had been given an accommodation that consisted in working from an office on the first floor of the Hospital, instead of the second floor where the Department was located. App. P. 109. Mrs. Hernandez did not have the same duties and responsibilities as Vitlloch. App. P. 109. Mrs. Hernandez duties included encoding and analyzing, Appellant never carried out those duties. App. P. 109. Mrs. Hernandez's request for accommodation consisted in being allowed to work from the first floor of the Hospital because her doctor did not allow her to go up the stairs due to her pregnancy. App. P. 109. Vitlloch does not know if Mrs. Hernandez requested to be placed in an area where she could avoid humid areas or if Mrs. Hernandez had any limitation regarding exposure to humidity. App. P. 109.

Even though neither the Hospital nor Mrs. Gotay discriminated against Vitlloch because of her disability, Vitlloch believes that the Hospital discriminated against her because Mrs. Gotay told her should live with her family abroad. App. P. 111. Vitlloch also alleges that she was discriminated due to her age because Mrs. Gotay would allegedly say she was obsolete, because Mrs. Gotay told her to apply at a hospital in Miami that did not have the same benefits as her job with the Hospital, and because Mrs. Gotay would say that Appellant was behind and that the years were making her slower. App. P. 111. Vitlloch alleges that Mrs. Gotay would reprimand her in front of people, yell at her, and tell her to be quiet. App. P. 111. Appellant believes that Mrs. Gotay discriminated against due to her age because starting in 2004, 2005, 2006, Mrs. Gotay would say that she did not see her working in the department, that Vitlloch should go with her family, that Vitlloch's parents were already elderly, that she did not visualize Vitlloch in the department, and that nothing that Vitlloch did was fine with Mrs. Gotay. App. P. 111. Appellant further believes that Mrs. Gotay harassed her because Mrs. Gotay reported to the Hospital's Human Resources Department an accident Vitlloch had in the Hospital's bathroom and because Mrs. Gotay once questioned an incorrect punch made by Mrs. Vitlloch. App. P. 112. However, Vitlloch does not know if Mrs. Gotay's treatment of her is because of her age or if it is simply because Mrs. Gotay does not like her. App. P. 111.

In 2014, a Hospital employee lodged a sexual harassment claim against Appellant. App. P. 112. Vitlloch alleges to be a victim of retaliation because of the conduct displayed by Mrs. Gotay after Vitlloch was accused of sexual harassment in 2014 and because Vitlloch said she wanted the sexual harassment accusation to be fully investigated. App. P. 112.

Vitlloch filed a Complaint against the Hospital on January 14, 2019. App. P. 1-7. Appellant alleged that the Hospital discriminated and retaliated against her in violation of the American with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et seq.* ("ADEA"), P.R. Act No. 100 of June 30 1959, 29 L.P.R.A. §146 *et seq.* (Act 100-1959). P.R. Act No. 44 of July 2, 1985, 1 L.P.R.A. §501 *et seq.* ("Act 44-1985"), and P.R. Act No. 115 of December 20, 1991, 29 L.P.R.A. §194 *et seq.* ("Act 115-1991). App. P. 5-6. Vitlloch did not include an unjust termination claim under P.R. Act No. 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.* (Act 80-1976). in the Complaint.

After the conclusion of discovery, the Hospital filed a Motion for Summary Judgment on May 19, 2020, requesting the dismissal of all claims presented by Appellant because she could not establish a *prima facie* case of discrimination or retaliation under the invoked statutes since she did not suffer an adverse employment action. Alternatively, the Hospital alleged that the Complaint must be dismissed

because the Hospital had a legitimate non-discriminatory reason for its actions. App. P. 42-473. On July 23, 2020, Appellant opposed to the Hospital's Motion for Judgment, App. P. 474-523, and on August 14, 2020, the Hospital replied to Appellant's opposition to Motion for Summary Judgment. App. P. 524-542. On March 31, 2021, the Honorable District Court issued an Opinion and Order and granted the Hospital's Motion for Summary Judgment and dismissing Appellant's claims against the Hospital. App. P. 550-565. On April 12, 2021, the Honorable District Court issued a Judgment dismissing with prejudice Vitlloch's Complaint. App. P. 566.

### III.   SUMMARY OF THE ARGUMENT

The District Court's Opinion and Order should be affirmed and remain undisturbed because Vitlloch did not show the existence of genuine issue of material facts. To the contrary, as will be shown below, the uncontroverted material facts show that there is no genuine dispute that would warrant a Trial. Particularly, Appellant cannot establish a *prima facie* case of discrimination or retaliation since she never suffered an adverse employment action. Furthermore, even if, *arguendo*, it was considered that Vitlloch could set forth a *prima facie* case of discrimination and/or retaliation, the Complaint must be dismissed, and the Judgment of the District Court affirmed because the Hospital had a legitimate nondiscriminatory reason for the actions it took in relation to Appellant.

## IV. <u>STANDARD OF REVIEW</u>

The standard of review in an appeal from a grant of summary judgment is *de novo.* <u>Lang v. Wal-Mart Stores East, L.P.</u>*,* 813 F.3d 447, 454 (1st Cir.,2016). Summary Judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Ameen v. Amphenol Printed Cirs., Inc.</u>, 777 F.3d 63, 68 (1st Cir. 2015). "An issue is 'genuine' if 'a reasonable jury could resolve the point in favor of the nonmoving party' [and a] fact is 'material' if 'its existence or nonexistence has the potential to change the outcome of the suit.'" <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011). To survive a defendant's motion for summary judgment, a plaintiff must "adduce specific facts showing that a trier of fact could reasonably find in his favor." <u>Brader v. Biogen Inc.</u>, 983 F.3d 39, 53 (1st Cir. 2020).

When evaluating a motion for summary judgment, the Court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. <u>Ameen</u>, 777 F.3d at 68. However, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation". <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 24 (1st Cir. 2009)

To withstand Hospital's motion for Summary Judgment, Appellant must introduce specific evidence to support her claims. However, as correctly decided by

the District Court, Vitlloch failed to present enough evidence to create a genuine issue of material fact.

## V.    ARGUMENT

A. **The Honorable District Court correctly granted Metrohealth's Motion for Summary Judgment**

   **i.    ADA**

The ADA prohibits and makes it unlawful for an employer to discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). Ramos-Echevarria v. Pichi's, Inc., 659 F.3d 182, 186 (1st Cir. 2011).

If a plaintiff does not have direct evidence of discrimination, a plaintiff may establish a *prima facie* case of discrimination by using the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ramos-Echevarria, 659 F.3d at 186. To establish a *prima facie* case under the McDonnell Douglas burden shifting framework a plaintiff must present evidence to show that she "(i) has a disability within the meaning of the [ADA]; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company

subject to the [ADA]; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." *Id.* (quoting <u>Jacques v. Clean–Up Group, Inc.,</u>96 F.3d 506, 511 (1st Cir.1996).

An adverse employment action is an action that "'results in some tangible, negative effect on the plaintiff' through 'a serious and material change in the terms, conditions or privileges of employment … as viewed by a reasonable person under the circumstance. <u>De Los Santos Rojas v. Hospital Español de Auxilio Mutuo de Puerto Rico, Inc.,</u> 85 F.Supp.3d 615, 625 (D.P.R. 2015) (citing <u>Rodriguez-Fonseca v. Baxter Healthcare Corp of Puerto Rico</u>, 899 F.Supp.2d 141(D.P.R. 2012).

"If a [claimant] so establishes these factors, 'the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.'" <u>Jones v. Walgreen Co.</u>, 679 F.3d 9, 14 (1st Cir. 2012).

The ADA also prohibits disparate treatment of disabled individuals and imposes an affirmative duty on employers to offer reasonable accommodations to disabled employees. <u>Colón-Fontañez v. Municipality of San Juan</u>, 671 FSupp.2d 300, 326 (D.P.R. 2009); citing <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19-20 (1st Cir. 2004). To establish a claim for failure to accommodate under the ADA, a plaintiff must show that (1) she suffers from a disability within the meaning of the statute, (2) she could perform the essential functions of her job

with or without reasonable accommodation, and (3) despite knowing of her disability, her employer did not offer her a reasonable accommodation. Calero-Cerezo, 355 F.3d at 20.

Under the ADA, the term "reasonable accommodation" may include, *inter alia*, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "A leave of absence and leave extensions are reasonable accommodations in some circumstances." Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998). An unpaid leave of absence may be a reasonable accommodation in some situations. García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st. Cir. 2000). *See* 29 C.F.R. Part 1630, Appendix (discussing § 1630.2(*o*)). "[T]he facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts available to the decision-maker at the time of the employment decision." Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 128 (1st Cir. 2017) (internal quotations omitted).

However, "an employer is not required to accommodate an employee in any manner in which that employee desires." Lewis v. Zilog, Inc., 908 F.Supp. 931, 947 (N.D.Ga. 1995). Courts have found that the word "reasonable" would be rendered

unnecessary in the ADA if employers were required in every instance to provide employees "the maximum accommodation or every conceivable accommodation possible." Lewis, 908 F.Supp. at 947; see also Vande Zande v. State of Wis. Dept. of Admin., 851 F.Supp. 353, 360 (W.D.Wis. 1994) ("an employee is entitled only to a reasonable accommodation and not to [a] preferred accommodation"), *aff'd*, 44 F.3d 538 (7th Cir. 1995). Therefore, a qualified individual with a disability for ADA purposes is "not entitled to the accommodation of [his] choice, but only to a reasonable accommodation." Lewis, 908 F.Supp. at 948.

"The interactive process involves an informal dialogue between the employee and the employer in which the two parties discuss the issues affecting the employee and potential reasonable accommodations that might address those issues." E.E.O.C. v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014). "Although the degree of interaction required varies in accordance to the circumstances of each case, the process requires open communication by both parties, and an employer will not be held liable if it makes 'reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed....'" Enica v. Principi, 544 F.3d 328, 338–39 (1st Cir. 2008) (quoting *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 28 (1st Cir.2001). However, the interactive process is not an end in itself, rather the interactive process is the means to obtain information related to an employee's condition to identify reasonable accommodations, therefore an

employer is not liable merely for not participating in the process. Sansone v. Brennan, 917 F.3d 975, 979 (7th Cir. 2019). "Failure to engage in this "interactive process" cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible." Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000).

In the Appeal Vitlloch alleges that she suffered disability discrimination because the Hospital allegedly did not provide her with a reasonable accommodation and because the Hospital's accommodation, providing her with a leave, constituted an adverse employment action since it was a suspension or termination. As a result, Vitlloch waived any claim that she suffered a hostile work environment because of her disability or that she was treated less favorably than other employees who requested a reasonable accommodation.[1] It is important to also note that Vitlloch's recent claim that the leave constituted a termination was not included in the Complaint. Therefore, any effort from Appellant to establish that she suffered a termination as a result of the unpaid leave should be disregarded as untimely.

Appellant claims that the Hospital, through Mrs. Gotay, discriminated against due to her disability since 2014. Vitlloch's claim contrast sharply form her

---

[1] An appellant's failure to challenge claims included in the district court's grant of summary judgment constitute a waiver of the appellant's right to appeal those counts. As such, the Court does not have to consider them. Snell v. Neville, 998 F.3d 474, 479 (1st Cir. 2021). See also Bekele v. Lyft, Inc., 918 F.3d 181, 186-87 (1st Cir. 2019).

deposition testimony where she stated that she did not suffer discrimination because of her disability. App. P. 111. Even though, her admissions in deposition are fatal to her claim, Vitlloch's claim must also be dismissed because Vitlloch relies on conclusory allegations to support her assertion on the appellate brief that she suffered disability discrimination. To that effect, the record cited includes conclusory statements such as "Mrs. Gotay's behavior was intended to create a hostile work environment for [Vitlloch]" (Ap. 517) and "[s]ince I started my job in 2014, I have known that [Appellant] suffered a pattern of harassment from Gotay. I witnessed how Gotay harassed, persecuted, and treated Vitlloch unfairly" (Ap. 514). No facts were provided to support or give credence to the conclusory statement. Thus, the statements must be disregarded.

Vitlloch further argues that she suffered discrimination because the Hospital allegedly never engaged in good faith with her since her doctor provided a letter certifying that she was able to perform her functions and filled out all the required information. The Appellant adduces that that the Hospital had to ask her if she was willing to work without the accommodation requested. However, Vitlloch's argument requires the Hospital to ignore her doctor's note and request for accommodation. The Hospital submits that given the circumstances and the information obtained from her doctor related to Vitlloch's reasonable accommodation request, the Hospital complied with its duties to identify a

reasonable accommodation. The reality is that after November 1, 2017, the Hospital was informed by Vitlloch's doctor that she could not be exposed to humidity, mold, strong odors and vapor lest her lung condition worsen. At that moment in time, the Hospital had suffered damages due to the passing of Hurricane Maria which included the destruction of the area where the Department was located which caused all of the documents in the Department to become wet. App. P. 103-104. As part of her duties, Appellant worked with the documents of the Department, which at that time were wet. App. P. 106. Additionally, the new area where the Department was located was also humid, had water damage and the ceiling tiles had to be changed due to humidity. App. P. 106. In those conditions, the Hospital could not provide Vitlloch with any sort of accommodation that would allow her to carry out her duties, since the documents in the Department had gotten wet and any other accommodation would inevitably expose Vitlloch to humidity.

The Hospital informed Vitlloch that the Hospital could not to provide her with an area where she could avoid smoke, vapor, strong odors and humid areas because such an area did not exist in the Hospital at that time due to the damages the Hospital sustained after Hurricane María. App. P. 106. The Hospital also informed Mrs. Vitlloch that she would inevitably be exposed to these conditions, smoke, vapor, strong odors and humid areas, either in her work area or while she carried out her duties. App. P. 107. Additionally, the Hospital informed Mrs. Vitlloch that the area

where the Department was located at that time was not completely free of humidity or vapor due to the emergency created by Hurricane María. App. P. 107. Since the Hospital could not provide the requested accommodation, the Hospital's decision to provide Vitlloch with an unpaid leave for up to three (3) months was a reasonable accommodation. It is important to note that Appellant has not identified any other sort of accommodation that the Hospital could have provided to comply with her request for reasonable accommodation.

Furthermore, when Appellant was provided with an unpaid leave of up to three (3) months, she was informed that she could return at an earlier time if allowed by her doctor or if any aspect of her condition changed. App. P. 107. The Hospital even encouraged Vitlloch to inform her accommodation to her doctor. Also, approximately one (1) month after Vitlloch was placed on leave, the Hospital, through Mrs. Ebony Walters, contacted Vitlloch to inquire how she was, if she had been to the doctor, and if there was anything she needed. App. P. 107-108. Mrs. Walters informed Vitlloch that even though she was on leave, she could return earlier if she presented a medical certificate. App. P.108. Vitlloch, effectively, held the key to return to work, yet she failed to make any effort to seek an additional evaluation from her doctor until February 2018, three (3) months after being placed on leave.

In light of the above, the Hospital's decision to provide Vitlloch with an unpaid leave for up to three (3) months was a reasonable accommodation and not an

adverse employment action, as alleged by Appellant. Since the unpaid leave is not an adverse employment action, Vitlloch cannot establish a *prima facie* case of disability discrimination.

Even if we were to consider that Vitlloch set forth a *prima facie* case of disability discrimination, which the Hospital denies she has done, Appellant's claim fails because she failed to establish that the Hospital's reason to place her on leave was a pretext. The Hospital's legitimate nondiscriminatory reason to place Appellant on leave is because she informed, through her doctor, that she could not be exposed to strong odors, vapors, mold and humid areas. Given the state of the Department after Hurricane Maria and that the documents which Vitlloch worked with were all wet, the Hospital was impeded from providing an accommodation that allowed her to carry out her duties while complying with the accommodation request. In such circumstances, the Hospital's only option to avoid exposing Vitlloch to strong odors, vapors, mold and humid areas was to place her in an unpaid leave. Thus, the Hospital did not suspend Mrs. Vitlloch because she had a disability, rather the Hospital provided Appellant with a reasonable accommodation that consisted of unpaid leave for up to three (3) months because Vitlloch requested to not be exposed to odors, vapors, mold and humidity or humid areas. Vitlloch has not stated any other accommodation that the Hospital could have provided that would show that its

decision to place her on unpaid leave was a pretext to hide any discriminatory animus.

### ii. <u>ADEA</u>

The ADEA makes it unlawful for an employer to discriminate against any individual with respect to the terms and conditions of employment or to adversely affect the status as an employee because of such individual's age. 29 U.S.C. § 623(a). Under the ADEA, an employer may take an adverse action for any reason, fair or unfair, so long as the action is not motivated by an age-based discriminatory animus. <u>Hidalgo v. Overseas Condado Ins. Agencies, Inc.</u>, 120 F. 3d 328, 337 (1st Cir. 1997). As the U.S. Supreme Court held, under "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age **is that age was the 'reason' that the employer decided to act**." <u>Gross v. FBL Fin. Services, Inc.</u>, 557 U.S. 167, 176 (2009) (emphasis added). Consequently, a plaintiff retains the burden of persuasion under ADEA "to establish that age was the 'but-for' cause of the employer's adverse action." <u>Gross,</u> 557 U.S. at 177.

When a claimant lacks direct evidence of age discrimination, the case is governed by the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). Any claimant who avails himself of the <u>McDonnell Douglas</u> paradigm, must make a *prima facie* case of age discrimination by showing that she: (1) was within the protected age group (i.e., 40 years or over); (2) was doing

28

her job at a level which met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) either younger persons were retained in the same position upon her termination or the employer did not treat age neutrally in taking the adverse action. Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129-130 (1st Cir. 2015).

To be considered an adverse employment action, the employer's action "must **materially** change the conditions of plaintiff's employ" Ramirez-Muñoz v. Wyndham Grand Rio Mar Beach Resort and Spa, 2016 WL 1698291, *8 (D.P.R. April 26, 2016) (citing Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002))(emphasis added). An action that may **materially** change the conditions of employment "typically involves discrete changes…, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012)

Ordinarily, a showing of the existence of minor changes in the working conditions because of a transfer or assignment will not suffice. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002). Instead, a plaintiff must, and has the burden to, show that the employer "[took] something of consequence from [her], say, by ... reducing her salary, or divesting her of significant responsibilities, or that it withh[e]ld from [her] an accouterment of the employment relationship." Marrero,

304 F.3d at 25. (brackets in original) (internal quotations omitted). Reprimands without any tangible consequences do not rise to the level of an adverse employment action. Bhatti v. Trustees of Boston University, 659 F.3d 64, 73 (1st Cir. 2011). If a reprimand is issued to an employee to correct a behavior or conduct that the employer believes needs to be corrected, but carries no tangible consequence, the reprimand cannot be said to be material. Id.

If plaintiff is able to make a *prima facie* case, the burden shifts to the employer, who must then articulate--not necessarily prove--some legitimate, non-discriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). As long as the employer proffers such a reason, the inference raised by plaintiff's *prima facie* case vanishes. Pages-Cahue v. Iberia Lineas Aereas de España, 82 F. 3d 533, 536 (1st Cir. 1996)

In the final round of burden-shifting it is up to the plaintiff, unassisted by the original presumption, to show that the employer's stated reason "is merely a pretext, to cloak the true reason of age discrimination." Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 198 (D.P.R. 2009); see also Vesprini v. Shaw Contract Flooring Serv., Inc., 315 F.3d 37, 43 (1st Cir. 2002). However, plaintiffs are required to do more than cast doubt on the defendants' proffered rationale. A significant showing that discriminatory animus motivated that employer's action is required. Franco v. Glaxosmithkline, 2009 WL 702221 at 17 (D.P.R. 2009). At this stage, the evidence

proffered "must be of such strength and quality as to permit a reasonable finding that the ... [adverse employment action] was obviously or manifestly unsupported." Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria, 550 F.Supp.2d 220, 227 (D.P.R. 2007) (citing Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997)). "[A] plaintiff must adduce some minimally sufficient evidence to support a jury finding that he has met his burden at the first stage, and again at the third stage." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993). "Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993).

A plaintiff alleging a hostile work environment in violation of the ADEA must establish: "(1) that she is a member of the class protected by the ADEA; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on age; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the harassment was both subjectively and objectively offensive; and (6) that there is some basis for employer liability." Franceschi-Vázquez v. CVS Pharmacy, 183 F. Supp. 3d 333, 341 (D.P.R. 2016)

To determine whether harassment is sufficiently severe and pervasive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." O'Rourke v. City of Providence, 235 F.3d 713, 728–29 (1st Cir. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,'" nor create a hostile work environment. Faragher, 524 U.S. at 788.

In the Appellate Brief, Vitlloch alleges that she suffered discrimination because of her age and that she was exposed to a hostile work environment in violation of the ADEA. However, Appellant's allegations must be disregarded since, once again, they are conclusory in nature devoid of any factual statements that could support them.

Even though Vitlloch alleges that she set forth a *prima facie* case age discrimination, the Hospital submits that she has failed to set forth the *prima facie* case. To that effect, Appellant alleges in a conclusory manner that younger employees were treated more favorably. However, Vitlloch fails to identify in her Appellate Brief the individuals that were treated more favorable and if they were similarly situated to her.

In her Complaint and deposition Vitlloch identified Mrs. Karelys Hernandez as a younger employee that allegedly was treated more favorable. Yet, by the

Appellant's own admission, Mrs. Hernández was not similarly situated to Appellant. Vitlloch testified that she did not carry out, and has never carried out, the same duties and responsibilities as Mrs. Hernandez. App. P. 109. Furthermore, the request for accommodation made by Mrs. Hernandez was different than the one made by Mrs. Vitlloch. While Mrs. Vitlloch requested to be moved from her work area to avoid odors, vapors or humid areas or humidity, Mrs. Hernandez requested to not go up the stairs to the Department. App. P. 105, 106, 109**.** Vitlloch's request was due to a lung condition that could be exacerbated if she was exposed to the strong odors, vapors, mold and humid area, while Mrs. Hernandez's request was because she was pregnant and her doctor prohibited her from going up the stairs. App. P. 105, 106, 109. Finally, Vitlloch does not know if Mrs. Hernandez's request included not being exposed to humidity or humid areas, nor did Mrs. Hernandez told Appellant that she could not be exposed to humidity. App. P. 109. Therefore, Mrs. Hernandez and Vitlloch were not similarly situated because (1) they did not hold the same position or carry out the same duties and (2) their requests for accommodation were different. Thus, Vitlloch has not presented any individual that was similarly situated to her that was treated more favorably than her.

In light of the above, because she cannot establish that the Hospital treated her less favorably than another similarly situated individual or that any difference in

treatment was due to her age, Vitlloch's disparate treatment in violation of the ADEA fails.

Vitlloch also alleges that she suffered an adverse employment action because she was terminated. However, as stated earlier, Vitlloch did not allege that she was terminated from the Hospital when she filed the Complaint in the case of reference, and she did not amend the Complaint to include such an allegation. Therefore, Vitlloch is prevented from presenting such an allegation at this time.

In light of the above, Appellant cannot establish a *prima facie* case of age discrimination.  Thus, her discrimination claim under ADEA must be dismissed.

Vitlloch also alleges that she was subject to a hostile work environment due to the treatment she received from her supervisor, Mrs. Gotay. However, as it will be discussed, Vitlloch's allegations regarding the hostile work environment must be dismissed since she relies on conclusory allegations.

Appellant alleges that she suffered a hostile work environment and makes reference to the unsworn testimony of two (2) individuals in an attempt to demonstrate that she was exposed to a hostile work environment because of her age. However, the unsworn testimonies that Vitlloch refers to are conclusory in nature and should not be considered by this Honorable Court of Appeals. To that effect, one of the witnesses stated that she "saw how Mrs. Gotay harassed, persecuted and treated [Vitlloch] unfairly." App. 514. However, said witness does not provide

specific examples or factual allegations of the harassment, persecution, or mistreatment. Nor does the witness establish that actions allegedly taken against Vitlloch were due to her age. Vitlloch also posits that her witness establishes that Mrs. Gotay's conduct was "principally to older employees." App. 516. Once again the witness statement used by Vitlloch is conclusory as it does not describe the conduct by providing specific examples other than the conclusory assertion that Mrs. Gotay created a hostile work environment. App. 516. Additionally, the witness' statement regarding "older employees" is conclusory since it does not define what is older or whether Vitlloch was included in that group. A similar conclusion can be reached when Vitlloch alleges that her witnesses establish that "Mrs. Gotay treated younger employee better and preferably". Neither the witnesses nor Vitlloch provide specific examples to show that younger employees were indeed treated better and preferably. Since Vittloch relies on conclusory statements, her allegations that she suffered a hostile work environment because of her age must be dismissed.

Finally, and more importantly, Appellant fails to establish that she was subjected to a hostile work environment in violation of the ADEA since nowhere in her brief does she allege and show specific examples that the actions she was exposed to, even if true, were sufficiently severe and pervasive as to alter her conditions of employment and create an abusive work environment.

The Hospital submits that to the extent that Vitlloch only alleged in Appeal that she suffered discrimination in violation of the ADEA because she was allegedly terminated and exposed to a hostile work environment, Appellant waived any other theory or claim of age discrimination presented before the District Court.[2]

On the other hand, if the Honorable Court were to consider that the Appellant made a *prima facie* case of age discrimination and this Court considers that the accommodation given to Appellant was an adverse employment action, the Hospital submits that it has articulated a legitimate and non-discriminatory reason for its action towards Vitlloch supported by the facts of the case. Specifically, the Hospital provided her with unpaid leave because the Hospital could not provide her with an accommodation that complied with Dr. Aranda's requirement that she not be exposed to strong odors, vapors, mold, and humidity. Thus, Appellant's age was not the but for reason why the Hospital denied her request for accommodation and instead provided her with an unpaid leave of absence. As a result, because the Hospital has articulated a legitimate nondiscriminatory reason for denying Appellant's request for accommodation and providing her a leave of absence, Vitlloch's age discrimination claim under the ADEA must be dismissed with prejudice

---

[2] See Fn. 1 above.

### iii. __State Law Claims__[3]

#### i. __Act 115-1991__

Act 115-1991 "protects employees that offer testimony before an administrative, judicial or legislative forum from adverse actions by their employers." Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 318 (D.P.R. 2010).

Act 115-1991 makes it unlawful for an employer to "discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer ... any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws. Ann. tit. 29 § 194a.

In Feliciano Martes v. Sheraton, 182 D.P.R. 368, 395–99, (2011), the Puerto Rico Supreme Court adopted and applied the McDonnell Douglas burden-shifting framework to PR Law 115-1991 claims. The Puerto Rico Supreme Court specifically held that the plaintiff has the initial burden of establishing a *prima facie* claim by showing (1) that she engaged in protected conduct; (2) that she

---

[3] Even though Vitlloch alleged claims pursuant to Act 44-1985 and Act 100-1959 in the Complaint, Appellant does not assert in the Appellate Brief that the Honorable District Court erred in dismissing said claims nor does she include any discussion regarding said claims in the Appellate Brief. Therefore, Appellant has waived any claim under Act 44-1985 and Act 100-1959. See Fn. 1 above.

experienced an adverse employment action; and (3) that there was a causal nexus between the protected conduct and the adverse action. <u>Feliciano Martes</u>, 182 D.P.R. at 396. See <u>Vazquez-Robles v. CommoLoco, Inc.</u>, 186 F. Supp. 3d 138, 156–57 (D.P.R. 2016)

If the employee can establish a *prima facie* case, the burden shifts to the employer to provide a nondiscriminatory, legitimate reason for taking the employment action against the employee. An employee can then demonstrate that the proffered reason is a mere pretext. <u>Godoy v. Maplehurst Bakeries, Inc.</u>, 747 F. Supp. 2d 298, 318 (D.P.R. 2010).

Vitlloch alleges that the Hospital retaliated against her after she filed a charge of discrimination before the Anti Discrimination Unit of the Puerto Rico Department of Labor because the Hospital unjustifiably delayed her reinstatement by four (4) days, when she started working they did not assign her any duties to do, and her direct supervisor Miró told her she was given instructions by Mrs. Gotay to mistreat her.

Despite Vitlloch's allegations, none of the alleged actions, if true, constitute an adverse employment action. Regarding Vitlloch's claim that the Hospital did not assign her any work when she returned to work or that Mrs. Miró told her that Mrs. Gotay had given instruction to mistreat her. Vitlloch has not alleged that said acts constituted an adverse employment action. Vitlloch has also failed to show that she

suffered any tangible negative consequence in her employment because the Hospital allegedly did not assign her any duties after she returned from leave, nor when Mrs. Miró allegedly informed her that Mrs. Gotay had given instructions to mistreat her. Thus, the facts in the case show that the actions alleged by Appellant, if in fact they occurred, which the Hospital denies, had no effect on her terms and conditions of employment.

Regarding the allegation that the Hospital delayed her reinstatement by four (4) days, the Hospital submits that said allegation is inaccurate. The uncontroverted facts show that the Hospital did not delay Vitlloch's return to work by four (4) days. In December 2017 the Hospital had already informed Vitlloch that she could return to work if she provided a medical certificate that stated that she could return to work. App. P. 108. Yet, when Appellant appeared to work on February 1, 2018, she failed to produce a doctor's note authorizing her to return to work. App. P. 110. At that moment, the Hospital, through Mrs. Gotay and Mrs. Walters, informed Vitlloch that she needed a certificate from her doctor authorizing her to return to work. App. P. 110. After Mrs. Vitlloch was informed on February 1 and 2, 2018, that she needed a medical certificate to return to work, Vitlloch waited four (4) days, until February 6, 2018, to visit her doctor and request the medical certificate required by the Hospital. App. P. 110. Once Vitlloch obtained the medical certificate and appeared for work in the Hospital, she returned to work. App. P. 112.

The above reveals that, contrary to Vitlloch's allegations, the Hospital did not delay her return to work by four (4) days, rather Vitlloch delayed her return to work by waiting four (4) days to visit her doctor to request a medical certificate that allowed her to work.

Furthermore, even if the Honorable Court determined that Vitlloch established a *prima facie* case of retaliation, the Hospital had a legitimate nonretaliatory reason to request that Villtoch present a medical certificate before she could return to work. The Hospital could not guarantee Vitlloch that, despite the improvements made to the facilities, she would not be exposed to humidity. App. P. 110. Thus, since Vitlloch had already announced that she could not be exposed to humidity or mold because her lung condition could worsen, the Hospital had a legitimate nonretaliatory reason to request a medical certificate authorizing Vitlloch to return to work.

In light of the above, Vitlloch cannot establish a *prima facie* case of retaliation, and even if it can, the Hospital had a legitimate nonretaliatory reason to request that she present a medical certificate before she returned to work. Therefore, Mrs. Vitlloch did not suffer retaliation in violation of Act 115-1991 and such claim must be dismissed at this time.

### ii. __Act 80-1976__

As stated above, Vitlloch did not allege in the Complaint that she was terminated without just cause in violation of Act 80-1976. Appellant also did not request leave to amend the Complaint to include an allegation of unjust termination under Act 80-1976. Appellant's first claimed that she suffered an unjust termination in her opposition to Hospital's Motion for Summary Judgment. App. P. 474, 489-490. In said instance, Appellant alleged that she was terminated without just cause in violation to Act 80-9176 because under said statute a suspension of ninety (90) days is considered a termination. App. P. 490.

Since Vitlloch did not allege to have been terminated without just cause when she filed the Complaint, and she did not amend her claims before discovery concluded, Appellant cannot succeed in presenting a claim under Act 80-1976 at this time as it is untimely. A plaintiff may not present new theories of liability for the first time in the opposition to motion for summary judgment since it would prejudice defendants who carried out discovery on the allegations pled in the Complaint Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 76 (1st Cir. 2016) (Internal quotations and citations omitted). Thus, Vitlloch's Act 80-1976 must be dismissed without further consideration.

However, even if the Honorable Court of Appeals would entertain her allegation, the same must be dismissed as it is incorrect. Contrary Vitlloch's

41

assertions, Act 80-1976 does not state that a suspension of ninety (90) days equals a termination. Rather, Law 80-1976 state that a suspension of **over three (3) months** is a termination under the law. "[D]ischarge shall be understood to be, besides the employee's layoff, his indefinite suspension or **for a term of over three (3) months**" 29 L.P.R.A. §185e. In the instant case, Vitlloch was not suspended. However, if the unpaid leave is considered a suspension, Vitlloch's argument fails since she was not placed on leave for a period of time exceeding three (3) months**.** The letter that was tendered to Appellant informed her that she was being placed on leave clearly stated that it was for a period of three (3) months, not a period exceeding three (3) months. App. P. 107, 459. Furthermore, the Hospital informed Vitlloch in the letter that if her condition changed, they would reevaluate the leave. App. P. 107, 459. Thus, the unpaid leave could have been for a period less than the three (3) months if Appellant's condition changed.

Therefore, since the Hospital did not place Vitllocn in an unpaid leave exceeding three (3) months, she cannot allege that the unpaid leave the Hospital provided to her was a automatically a discharge under Act 80-1976.

## VI.   <u>CONCLUSION</u>

Unsatisfied with the District Court's decision, Appellant requests this Honorable Court of Appeals to review and set aside the Opinion and Order issued on March 31, 2021.  However, Vitlloch's request must be denied since she relies on

conclusory allegations devoid of factual statements to support her claim that the Motion for Summary Judgment should have been denied by the District Court. Furthermore, Vitlloch's request must be denied since she presents a new theory of liability, unjust termination under Act 80-1972, that was not alleged in the Complaint. Thus, said claim is untimely.

Considering the foregoing, the Hospital respectfully requests this Honorable Court to affirm the District Court's Opinion and Order issued on March 31, 2021, and the Judgment dismissing the Complaint with prejudice issued on April 12, 2021.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26th day of January, 2022.

s/**LLOYD ISGUT-RIVERA**
USCA- 1st Cir. No. 1175903
E-mail:  lisgut@pg.legal

s/**NANNETTE RODRÍGUEZ RODRÍGUEZ**
USCA-1ST Cir. No. 1199053
Email:  nrodriguez@pg.legal

**PIZARRO & GONZÁLEZ**
PO Box 194302
San Juan, Puerto Rico 00918-4149
Tel. (787) 767-7777
Fax (787) 763-2286

## VII.  <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned attorneys hereby certify that this brief contains 8,649 words, excluding Corporate Disclosure Statement, Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service. Furthermore, pursuant to Federal Rule 32(a)(5) and 32(a)(6) of the Federal Rules of Appellate Procedure, the undersigned attorneys certify that this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14 point.

**PIZARRO & GONZÁLEZ**
PO Box 194302
San Juan, Puerto Rico 00918-4149
Tel. (787) 767-7777
Fax (787) 763-2286


s/**LLOYD ISGUT-RIVERA**
USCA- 1st Cir. No. 1175903
E-mail:  lisgut@pg.legal

s/**NANNETTE RODRÍGUEZ RODRÍGUEZ**
USCA-1ST Cir. No. 1199053
Email:  nrodriguez@pg.legal

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2022, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the parties or their counsel of record are registered as ECF filers and that they will be served by the CM/ECF system.

**PIZARRO & GONZÁLEZ**
PO Box 194302
San Juan, Puerto Rico 00918-4149
Tel. (787) 767-7777
Fax (787) 763-2286

s/**LLOYD ISGUT-RIVERA**
USCA- 1st Cir. No. 1175903
E-mail: lisgut@pg.legal

s/**NANNETTE RODRÍGUEZ RODRÍGUEZ**
USCA-1ST Cir. No. 1199053
Email: nrodriguez@pg.legal